## SMITH v INDUSTRIAL COMMISSION

Ohio Appeals, 1st Dist, Hamilton Co

No 4999. Decided Feb 3, 1936

B. B. Bridges, Columbus, and R. N. Larrimer, Columbus, for plaintiff in error.

John W. Bricker, Attorney General, Columbus, R. R. Zurmehly, Asst. Atty. Gen., Columbus, and Stewart S. Cooper, Asst. Atty. Gen., Cincinnati, for defendant in error.

## OPINION

By MATTHEWS, J.

In connection with the flying school there was maintained a starting line where the planes were parked preparatory for use by the instructors. It was a part of the duty of Orlin Smith to take planes from the hangars, which were about 200 yards away, to this starting line and leave them there. In doing this, the planes were propelled on their wheels along the ground by the resistance of the air to the propellers. This was the uniform method. We think we can take judicial notice that causing an airplane to mount into the air and descend to a safe landing within that distance was so nearly an impossibility in the state of the art that no rational person would attempt it.

The record shows that on the morning when this accident occurred this airplane was moved out of its hangar by one Purdy, an employee having duties similar to those of Smith. He then started the motor preparatory to moving it to the starting line, and it manifestly was his intention to move the plane from where he had parked it to the starting line but just at this point the foreman, Angieri, who had no authority to operate an airplane in the air, appeared, ordered Purdy out of the airplane, got in himself, and increased the speed of the motor. Orlin Smith then came up and got in the plane. At this time the plane was not headed directly toward the starting line, but was headed the longest way of the flying field and the way that would be taken if it was the purpose to fly the airplane. It does not appear, however, that this plane was parked in any different way or place than was usual when planes were brought out of the hangars for the purpose of taking them to the starting line. As soon as Smith entered the airplane they proceeded the long way of the field, at the usual point left the ground, turned back over the hangars in the air, and crashed to the ground at a point near but outside of the flying field. No one heard Angieri and Smith speak to one another at any time about their intentions on this occasion.

It appeared in evidence that in order to

qualify for either a commercial or transport pilot, a certain number of hours experience in flying was required; that both Angieri and Smith contemplated qualifying for commercial or transport flying, and they were seeking means and opportunities whereby to make up their deficiencies in that respect. This phase of their activities was entirely personal to themselves. The Embry-Riddle Company, as their employer, was not concerned in it at all. It is reasonably clear that Angieri and Smith would not have been given credit for time in flying under the circumstances on this occasion, as it was entirely unauthorized and no record had, or would have, been made of it for that purpose.

Under such circumstances, is there any evidence from which a reasonable inference may be drawn that Smith suffered death in the course of his employment from a cause arising out of his employment?

Under §35 of Art. II of the Ohio Constitution, the purpose for which the legislature may create a state fund for employees by compulsory contributions from employers is limited to providing compensation to employees and their dependents for injuries, death, or occupational diseases "occasioned in the course of their employment." This constitutional provision was construed in Fassig v State, 95 Oh St, 232, and the court held that it referred only to injuries in the course of the employment which are the result of or arise out of the employment, and that neither the constitutional nor statutory provision referred to any injury "which has its cause outside of and disconnected with the employment although the employee may at the time have been engaged in the work of the employer in the usual way."

Many cases have been decided since Fassig v State, supra, some finding that the injury was occasioned in the course of the employment and others holding that it was not, all depending on the circumstances disclosed in the particular case. They all illustrate the application of the principle. In **Industrial Commission v Weygandt, 102 Oh St, 1,** the test of compensability is stated in this language:

"The test of right to award from the insurance fund under the Workmen's Compensation Law, for injury in the course of employment, is not whether there was any fault or neglect on the part of the employer, or his employes, but whether the employment had some causal connection with the injury, either through its activities, its conditions or its environments."

It seems to us clear that when Angieri entered that airplane, he intended to fly in it for his own pleasure or experience or both without any intention to serve any purpose of, or to perform any duty whatsoever owing to, his employer. It clearly was not his thought that he thereby was engaged in taking the airplane from the hangar to the starting line. That would have been in the line of his duty, but his action conclusively negatives any such intention on his part. A clear, deliberate, and radical departure from the line of duty cannot by any sound process of judicial reasoning be construed to be in the course of the employment, notwithstanding it was during the period of employment. How stands this with reference to Smith? Does the fact that Angieri departed from his employment so as to break the causal relation between his employment and his death prevent Smith's dependent from recovering in this case as a matter of law? In other words, can it be said as a matter of law that there was no causal relation between Smith's death and his employment?

Angieri was the foreman. He had authority to direct Smith as to repairing planes and moving them from place to place on the ground. It was the usual time to move planes from the hangars to the starting line. This plane had been brought out of the hangar, and its motor started for that purpose. All the circumstances up to that point indicated that the course of the employment was proceeding without deviation. When Angieri entered the plane it was, to all outward appearance, just another step in the course of the employment. And when Smith entered and took his seat beside him, he appeared to be doing that for which he was employed. There is no evidence indicating that Smith at the time knew anything of Angieri's intention to do otherwise than pursue the normal tenor of the employment. When Angieri started the plane and proceeded a short distance—certainly by the time the plane left the ground—Smith became aware of Angieri's purpose. Whether he knew it before then is debatable, depending on inference which might or might not be drawn. We are clear that it cannot be said that reasonable minds could draw but the one conclusion that Smith, while yet on the ground with the power of choice, knew of Angieri's purpose. If we are correct in this, then the validity of the action of the trial court must be determined on the assumption that Smith did not acquire such knowledge until sometime after the plane started to move.

It is, we think, correct legal reasoning to indulge the presumption that Smith was not a wrongdoer. When he was on the employer's premises doing the physical things required by his employment we should assume, until the contrary appears, that his purposes and motives were compatible with his duty. There was, therefore, substantial evidence that when Smith entered the plane and Angieri started it along the ground, he was in the course of his employment. On this hypothesis, it was at that point that the occurrence resulting in his death had its commencement. At that time and place Smith was acting in the course of his employment engaged with the instrumentalities in an activity thereof. There is where the causal relation between his employment and his death existed, if the jury should draw the inference suggested. The evidence certainly does not require that an inference must be drawn that Smith at any time thereafter voluntarily left his duties and joined with Angieri in flying this airplane contrary to his duty and outside of his employment. In fact it may be that the accident occurred by reason of Smith's efforts in opposing Angieri. This hypothesis is supported by reasonable inferences from the evidence.

Under such circumstances we are of the opinion that an issue is raised supported by substantial evidence, which must be submitted to the jury for its determination.

For these reasons, the judgment is reversed and the cause remanded for further proceedings according to law.

ROSS, PJ, and HAMILTON, J, concur.